IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CABOT CORPORATION,              )
                                )   Civil Action
            Plaintiff           )   No. 08-CV-01691
                                )
        vs.                     )
                                )
NIOTAN, INC.,                   )
                                )
            Defendant           )

                        *    *    *

APPEARANCES:

        MATTHEW B. LOWRIE, ESQUIRE
        KEVIN M. LITTMAN, ESQUIRE
        LYNN ROSNER RAUCH, ESQUIRE
            On behalf of Plaintiff

        MARK A. ROMEO, ESQUIRE
            On behalf of Defendant

                        *    *    *

                    O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on Defendant Niotan,

Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or

Improper Venue or, in the Alternative, Motion to Transfer Venue

to U.S. District Court for the District of Nevada, which motion

was filed September 29, 2008.  Cabot's Opposition to Niotan's

Motion to Dismiss for Lack of Personal Jurisdiction or Improper

Venue or, in the Alternative, Motion to Transfer was filed

October 14, 2008.  A hearing on defendant's motion was conducted

on April 20, May 15, 26 and 27, 2009.  Closing arguments were

conducted on July 15, 2009.  For the following reasons, I deny
defendant's motion to dismiss but grant defendant's alternative
motion to transfer this matter to the United States District
Court for the District of Nevada.

Specifically, I conclude that plaintiff has not
produced sufficient proof, by a preponderance of the evidence, to
permit the exercise of personal jurisdiction over out-of-state
defendant Niotan, Inc., pursuant to the Commonwealth of
Pennsylvania's Long Arm statute.  In addition, even though this
court may not constitutionally assert personal jurisdiction over
defendant, I exercise the discretion granted pursuant to
28 U.S.C. §§ 1406(a) and 1631 to transfer this matter to the
District of Nevada.

<u>JURISDICTION AND VENUE</u>

Jurisdiction in this case is based upon diversity of
citizenship pursuant to 28 U.S.C. § 1332.  Venue is alleged to be
proper pursuant to 28 U.S.C. § 1391 because the events giving
rise to plaintiff's claims allegedly occurred in Berks County,
Pennsylvania, which is in this judicial district.

<u>PLAINTIFF'S COMPLAINT</u>

On April 9, 2008 plaintiff Cabot Corporation filed a
six-count Complaint against defendant Niotan, Inc. alleging the
following causes of action: (Count I) misappropriation of trade
secrets; (Count II) tortious interference with contractual

relations; (Count III) conversion; (Count IV) aiding and abetting
the breach of fiduciary duties; (Count V) unfair competition and
unfair and deceptive trade practices; and (Count VI) unjust
enrichment.

Plaintiff Cabot Corporation is a Delaware corporation
with its principal place of business in the Commonwealth of
Massachusetts.  Defendant Niotan, Inc. is a privately-held Nevada
corporation with its principal place of business in the State of
Nevada.

In its Complaint, plaintiff contends that it has
various processes, methods, techniques and other information
relating to the production of tantalum powder and related
products.  Plaintiff asserts that many of its processes, methods
and techniques are not generally known or readily ascertainable
by anyone but plaintiff.  Plaintiff further asserts that it
derives great economic value by having kept and continuing to
keep secret these processes, methods and techniques.  In
addition, plaintiff avers that it has made numerous efforts to
maintain the secrecy of its information.

Plaintiff contends that defendant has been recruiting
its former employees and consultants who all owe a duty of
confidentiality to plaintiff regarding information learned while
working for or with plaintiff.  Moreover, plaintiff asserts that
these former employees and consultants have shared information

with defendant about the various processes, methods, techniques and other information relating to the production of tantalum powder and related products.

<u>CONTENTIONS OF THE PARTIES</u>

<u>Defendant's Contentions</u>

Defendant Niotan, Inc. asserts that this court lacks personal jurisdiction over it and that the Eastern District of Pennsylvania is not a proper venue for this diversity action. Thus, defendant argues that I should dismiss plaintiffs' Complaint for lack of jurisdiction or improper venue.  In the alternative, defendant asserts that this case should be transferred to the United States District Court for the District of Nevada.

Defendant contends that it has not at any time pertinent to this matter done any of the following acts:

1.    incorporate in Pennsylvania;

2.    maintain its principal place of business, a business office, a mailing address, a telephone listing or an agent for service of process in Pennsylvania;

3.    employ employees or engage consultants to perform work in Pennsylvania;

4.    register to do business in Pennsylvania;

5.    conduct advertising, produce sales or have customers in Pennsylvania;

6.    file administrative reports with any agency or department of the Commonwealth of Pennsylvania;

7.   pay taxes in Pennsylvania;

8.   own, lease, manage or maintain any real
     property in Pennsylvania; and

9.   commit any alleged tortious acts in
     Pennsylvania.

Defendant avers all of the foregoing facts in support
of its contention that defendant is not subject to general
personal jurisdiction pursuant to the traditional test that
authorizes district courts to exercise personal jurisdiction over
out-of-state defendants to the extent permitted by the long-arm
statute of the forum state.  Defendant relies on the decision of
now Chief Judge J. Curtis Joyner in O'Connor v. Sandy Lane Hotel
Co., Ltd., 2005 U.S.Dist. LEXIS 7397 (E.D.Pa. Apr. 28, 2005)
(Joyner, J.) for the traditional test.

In addition, defendant asserts that the court does not
have specific personal jurisdiction because it has not directed
any activities into Pennsylvania, plaintiff's claims do not arise
from any activity defendant has done or directed into
Pennsylvania and that exercise of jurisdiction would not comport
with traditional notions, fair play and substantial justice.

Furthermore, defendant argues that because the factual
averments contained in plaintiff's Complaint involve an
intentional tort, the traditional test set forth in O'Connor is
not applicable.  Rather, defendant contends that the test that
should be utilized is the one enunciated in the decision of the

-5-

United States Supreme Court in <u>Calder v. Jones</u>, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

Defendant asserts that in <u>IMO Industries, Inc. v. Kiekert AG</u>, 155 F.3d 254 (1998) the United States Court of Appeals for the Third Circuit, interpreting <u>Calder</u>, set forth the following three-prong test in cases involving intentional torts: (1) defendant must have committed an intentional tort; (2) plaintiff must have felt the brunt of the harm caused by the tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and (3) defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. <u>IMO Industries</u>, 155 F.3d at 256.

In this case, defendant contends that plaintiff is unable to come forward with evidence which satisfies either the second or third prongs of the <u>Calder</u> test. Moreover, defendant asserts that plaintiff cannot show contacts which would satisfy the traditional test either. Specifically, defendant contends that much of the evidence that plaintiff will attempt to assert occurred prior to the applicable statutes of limitations on the causes of action asserted.

Defendant relies on the decision of this court in <u>Superior Coal Co. v. Ruhrkohle A.G.</u>, 83 F.R.D. 414

(E.D.Pa. 1979)(Troutman, J.) which requires the activities and contacts with the forum state to have occurred prior to the expiration of the applicable statutes of limitations on the underlying causes of action.  In particular, defendant contends that many of the acts or contacts relied upon by plaintiff occurred prior to the two and three year statutes of limitations involved in this case.[1]

In the alternative, defendant contends that this action should be dismissed for improper venue pursuant to 28 U.S.C. § 1391(a).  Section 1391(a) provides that where jurisdiction is premised upon diversity of citizenship, an action may only be brought in a judicial district (1) where any defendant resides, if all defendants reside in the same state; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or (3) the judicial district in which any defendant is subject to personal jurisdiction at the time of the action is commenced, if there is no district in which the action may otherwise be brought.

Defendant contends that 1391(a) is not a basis for jurisdiction because it does not reside in Pennsylvania; the alleged events giving rise to plaintiff's claims did not occur in Pennsylvania because any allegedly wrongful disclosures would

---

[1]     Because I find below that the all contacts alleged by plaintiff do not suffice to establish the requisite minimum contacts, I have not parsed out which contacts occurred prior to or after the applicable statutes of limitations for the causes of action asserted in plaintiff's Complaint.

have occurred in Nevada, not Pennsylvania; and because there is another district in which this case could be brought, namely, the United States District Court for the District of Nevada.

In addition, defendant argues in the alternative, that if the court is unwilling to dismiss the case for lack of venue, the court should nonetheless transfer this case pursuant to 28 U.S.C. 1404(a) to the District of Nevada for the convenience of the parties and witnesses and in the interests of justice. Specifically, defendant contends that the primary witnesses in this action will be current and former Niotan employees who are residents of Nevada, and that by transferring the case to Nevada, both parties will be able to compel the testimony of those witnesses at trial.

<u>Plaintiffs' Contentions</u>

Plaintiff asserts that personal jurisdiction over defendant is proper under both the traditional test and the <u>Calder</u> "effects test".

Regarding the traditional test, plaintiff contends that defendant purposefully directed its activities toward Pennsylvania or consummated a transaction in Pennsylvania. Plaintiff also argues that its claims arise out of, or relate to, at least one of those activities.

Plaintiff also contends that defendant had numerous communications with former Cabot employees while they were

located in Pennsylvania, including a visit by Niotan's CEO to Pennsylvania to recruit an employee.  Plaintiff further asserts that defendant sent offer letters into Pennsylvania and that former Cabot employees entered into employment and confidentiality agreements with defendant in Pennsylvania, while they were still Pennsylvania residents.

Regarding the "effects test" plaintiff argues that defendant committed an intentional tort; that plaintiff felt the brunt of the harm in Pennsylvania; and that defendant expressly aimed its tortious conduct at Pennsylvania.  Specifically, plaintiff contends that its manufacturing plant in Boyertown, Berks County, Pennsylvania is the heart of its tantalum business and where its only United States facility is located.  Moreover, various former Cabot employees worked at and for this facility, entered into confidentiality agreements at this facility and learned and developed Cabot's trade secrets during that work.

Moreover, plaintiff asserts that Niotan, knowing that Cabot's tantalum business and business-related trade secrets were located in Pennsylvania, engaged in a systematic process of hiring former Cabot employees and contractors with the intention of obtaining Cabot's trade secrets.

Plaintiff avers that exercising jurisdiction over Niotan will comport with traditional notions for fair play and

substantial justice because it will not be a burden for Niotan to defend this action in Pennsylvania.

Plaintiff asserts that there is no problem with venue in this case because defendant is subject to personal jurisdiction and because defendant has not met its burden to show that trying this case in Nevada will be more convenient to either the parties or witnesses.

<u>STANDARD OF REVIEW</u>

Rule 4(e) of the Federal Rules of Civil Procedure authorizes district courts to exercise personal jurisdiction over out-of-state defendants to the extent permitted by the long-arm statute of the forum state.  <u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 2005 U.S.Dist. LEXIS 7397 (E.D.Pa. Apr. 28, 2005) (Joyner, J.).

In Pennsylvania, the applicable jurisdictional statute is 42 Pa.C.S.A. § 5322, which provides in subsection (b) that Pennsylvania shall exercise jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States."  The effect of this statute is to allow Pennsylvania to assert personal jurisdiction to the extent permissible under the Due Process Clause of the United States Constitution.  <u>Time Share Vacation Club v. Atlantic Resorts, Ltd.</u>, 735 F.2d 61, 63 (3d Cir. 1984).

When, as here, a jurisdictional challenge has been raised by a defendant, plaintiffs bear the burden of producing sufficient facts to establish that the exercise of personal jurisdiction is proper.  Mellon Bank (East) PSFS National Association v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  The plaintiff may sustain its burden of proof by establishing jurisdictional facts through sworn affidavits or other competent evidence.

However, plaintiff may not rely on bare pleadings alone to withstand defendant's Rule 12(b)(2) motion.  Once a motion is made, "plaintiff must respond with actual proofs, not mere allegations."  Atiyeh v. Hadeed, 2007 U.S.Dist. LEXIS 19534 at *14 (E.D.Pa. Mar. 20, 2007)(Pratter, J.).  The court may proceed either by affidavits and sworn documents, or by hearing.  Id.

Where no evidentiary hearing has taken place, plaintiff must make out a prima facie case.  LaRose v. Sponco MFG, Inc., 712 F.Supp. 455, 458 & n.2 (D.N.J. 1989).  To decide whether plaintiffs have made a prima facie showing of personal jurisdiction, the court is required to accept plaintiffs' allegations as true, and construe disputed facts in their favor.  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

If plaintiff succeeds in making a prima facie case for jurisdiction by demonstrating the existence of minimum contacts,

-11-

the burden shifts back to defendant to show that the exercise of jurisdiction is nonetheless unconstitutional.  <u>Mellon Bank</u>, 960 F.2d at 1226.  The United States Court of Appeals for the Third Circuit has stated that if defendant fails to carry its burden at this stage of the proceedings, the case will not be one in which it is appropriate for the court to further consider factors relating to "fair play and substantial justice." <u>Mellon Bank</u>, 960 F.2d at 1227.

However, if the court conducts an evidentiary hearing, plaintiff has a more substantial burden of proving that personal jurisdiction is proper by a preponderance of the evidence. <u>Atiyeh</u>, <u>supra</u>; <u>LaRose</u>, <u>supra</u>.

FINDINGS OF FACT

Based upon the pleadings, exhibits,[2] the proposed findings of fact submitted by the parties, the testimony of the witnesses[3] at the hearings conducted April 20, May 15, 26 and 27, 2009, and the closing arguments conducted before me on July 15, 2009 and based upon my credibility determinations, I make the

---

[2]     There were 55 exhibits admitted which the parties labeled as joint exhibits for the purposes of identification but not admission.  In addition, defendant admitted eight exhibits.  Plaintiff did not seek to admit any exhibits other than those listed as joint exhibits.

[3]     Plaintiff presented the testimony of Stephen J. Krause, Director of Global Operations for plaintiff Cabot Corporation.  Defendant presented the testimony of John E. Crawley, founder, Chief Executive Officer, director and shareholder of defendant Niotan, Inc.

following findings of fact each of which have been established by a preponderance of the evidence.[4]

Plaintiff Cabot Corporation is a global specialty chemicals and materials company organized under the laws of the State of Delaware with its principal place of business located at 2 Seaport Lane, Suite 1300, Boston, Massachusetts.  Cabot Corporation is not a citizen of the Commonwealth of Pennsylvania.

Cabot Corporation has 51 manufacturing facilities located throughout the world.  Plaintiff has a manufacturing facility in Boyertown, Berks County, Pennsylvania which processes tantalum[5] and produces a number of other tantalum based products. One of the products that plaintiff has produced at its Boyertown facility is tantalum powder.[6]  Cabot also produces tantalum

---

[4]      The parties do not agree on the appropriate standard of review that the court must employ in reviewing the evidence in this matter. Plaintiff contends that I am required to accept its allegations as true, and construe disputed facts in its favor.  Defendant argues that because a hearing was conducted, plaintiff must prove its contentions by a preponderance of the evidence.

As noted above, and based upon Atiyeh, supra and LaRose, supra, I agree with defendant and have analyzed the evidence and made my findings of fact by determining what disputed evidence has been proven or not proven by the preponderance standard.

[5]      Tantalum is an elemental metal (chemical symbol "TA", atomic number 73) that is used in many electronic products, including electrolytic capacitors.  To be used for industrial purposes, tantalum ore must be processed to produce metal powders, wire and other tantalum products.

[6]      On January 29, 2009, after this case was filed but before commencement of the hearing on defendant's motion to dismiss, Patrick Prevost, President and Chief Executive Officer of Cabot Corporation announced publicly that it was Cabot's intention to close the powder manufacturing operations at the Boyertown plant.  See Defendant's Exhibit 1, page 3.

powder at a facility located in Aizu, Japan.  Tantalum powder is the product involved in this case.

Defendant Niotan, Inc., is a privately-held (non-public) corporation founded in 2001 and organized under the laws of the State of Nevada, with its principal and only place of business located at 16 Bruce Way, Mound House, Nevada.  Niotan keeps all its records at its Mound House, Nevada location.  Niotan manufactures just one product, tantalum powder.  Tantalum powder is an electronic powder material that can be pressed into annodes and used in small electronic passive components.

Plaintiff has developed a number of trade secrets and other confidential materials regarding its tantalum powder manufacturing process.  These trade secrets and confidential materials relate to equipment design and operation, the materials used in the processing of tantalum powder, operating procedures used to control specific properties of tantalum powder and testing and analysis of the powders which are produced.

There are currently three producers of tantalum powder in the United States, plaintiff Cabot Corporation, defendant Niotan, Inc., and H.C. Starck, located in Newtown, Massachussetts.  Fansteel Corporation, based in Muskogee, Oklahoma, once produced tantalum powder, but went out of business in the 1990's.

-14-

In the late 1990's H.C. Starck began a trend in the industry of moving its tantalum powder production offshore. Plaintiff has followed that trend by moving its tantalum powder production to its Aizu, Japan facility.  At this time, it appears that defendant may soon be the only company producing tantalum powder in the United States.

Prior to announcing that it was moving its tantalum powder operations to its Aizu, Japan facility in early 2009, plaintiff implemented four reductions in force affecting its Boyertown, Pennsylvania facility over the eight prior years. Specifically, plaintiff has reduced the workforce in its tantalum powder operation in Boyertown by 60 percent since 2004.

The employee base for the tantalum powder industry consists mainly of former Cabot, H.C. Starck and Fansteel employees and consultants.  Because of the small number of companies in the tantalum powder industry, the talent pool of individuals who have experience in the industry has always been very small.  Moreover, because a number of the tantalum manufacturers have been moving their operations overseas, the opportunities for former employees of those companies has been limited.  Niotan is the only company producing tantalum powder that has been hiring in the United States.

Since its inception in 2001, defendant has hired approximately 180 individuals.  Of those 180 individuals,

-15-

defendant has hired former employees of Cabot, H.C. Starck, Fansteel and foreign companies V-Tech (Japan) and Thai Tantalum (Thailand).  The majority of the individuals hired by defendant have been hired through a temporary employment agency located in Nevada.

Defendant has not targeted current employees of plaintiff or any other company.  Defendant does not utilize headhunters or solicit prospective employees.  Most of defendant's employees start as temporary employees provided by an employment agency.

Niotan hired former Cabot employees or consultants after they were laid off or their employment with Cabot was otherwise terminated.  Niotan did not initiate contact with any Pennsylvania resident for the purpose of trying to recruit them to work for Niotan.  No former Cabot employee has worked for Niotan in Pennsylvania.

Defendant has hired 13 former employees or consultants of plaintiff.  There have been roughly 20 other former Cabot employees who have contacted defendant about employment, but were never offered positions with Niotan.

The thirteen former Cabot employees or consultants hired by Niotan are Don Bates, Santo Ferrarello, Jim Fife, Robert Hard, Amir Hussain, David Knudson, John Lindell, Carlos Rerat,

-16-

Lee Ruch, David Sanders, Dorran Schultz, Kathy Sokat and Daniel White.

Don Bates is the only former Cabot employee with whom Niotan initiated direct contact.  Mr. Bates was living in Montana and working for Cabot on a consulting basis, which was not known by Niotan.  Niotan CEO John Crawley contacted Mr. Bates by telephone to inquire about his availability to consult for Niotan.

At that time, Mr. Bates informed Mr. Crawley that he was currently consulting for Cabot.  Mr. Crawley explained to Mr. Bates that Mr. Bates could not consult for Niotan if he was consulting for Cabot.  Mr. Bates later left his consulting position with Cabot and began consulting for Niotan.  However, he did not consult for both companies at the same time.

The rest of the former Cabot employees initiated contact with Niotan about employment, rather than Niotan contacting them about employment.

Santo Ferrarello is a former Cabot employee. Mr. Ferrarello initiated contact with Niotan.  When he was offered a job with Niotan, his offer letter indicated that he would not be required to move to Nevada if he accepted a position with Niotan.  However, Niotan determined that the position would require Mr. Ferrarello to live in Nevada.

As a result, Mr. Ferrarello and his wife moved to Nevada for his employment.  Mr. Ferrarello worked for Niotan from June 2003 until sometime after March 2004.  Mr. Ferrarello currently lives in Pennsylvania.

Amir Hussain is a former employee of Cabot.  He initiated contact with Niotan about employment.  Mr. Hussain flew from Pennsylvania to Nevada to interview for a position with Niotan.  Mr. Hussain worked for Niotan only for a brief time.  He currently lives in Pennsylvania.

David Knudson is a former employee of Cabot.  He was living in Pennsylvania when he was referred to Niotan by a third-party.  Mr. Knudson initiated contact with Niotan.  He flew from Pennsylvania to Nevada to interview for a position with Niotan.  Mr. Knudson was eventually hired, moved to Nevada, and is a current employee of Niotan.

Lee Ruch, a former employee of Cabot, was initially hired as a consultant with Niotan and eventually became an employee.  Mr. Ruch initially contacted Niotan about employment with the company.

Mr. Ruch maintained homes in both Pennsylvania and Maine and kept an apartment in Carson City, Nevada while he was a Niotan consultant.  Considering the shifting burden of proof standard, neither party has established by a preponderance of the evidence what was Mr. Ruch's state of citizenship at the time of

his hiring as a consultant, considering his multiple dwellings. Mr. Ruch is a current employee of Niotan.

Dorran Schultz is a former Cabot employee who initially contacted Niotan about employment. Prior to accepting employment with Niotan, Mr. Schultz resided in Perkiomenville, Pennsylvania. Mr. Schultz and Daniel White were good friends.

When Mr. Schultz was laid off from his employment by Cabot, he contacted Mr. White to tell him about his change of circumstance. Mr. Schultz flew from Pennsylvania to Nevada for an interview and was eventually hired at Niotan. Mr. Schultz is a current Niotan employee.

Daniel White is a former Cabot employee who was first made aware of possible employment opportunities at Niotan by his friend and former Cabot employee David Knudson. Mr. Knudson spoke to Mr. White before Mr. Knudson became employed at, or received an offer of employment from, Niotan. Mr. White then contacted Mr. Crawley about possible employment with Niotan.

Eventually, Mr. Crawley met with Mr. White in Reading, Pennsylvania, while Mr. Crawley was on business for another company, Pacific Ore, a company owned by Mr. Crawley's father. Mr. White later traveled to Nevada for an interview with Niotan and eventually accepted employment with Niotan in Nevada. Mr. White is a current Niotan employee.

-19-

Defendant also hired a number of former Cabot employees as consultants.  None of the consultants lived in Pennsylvania when they started working for Niotan.  As noted above, Don Bates lived in Montana when he did consulting work for Niotan.  Jim Fife was a resident of South Carolina when he began discussions with Niotan about doing consulting work for it.  Robert Hard was a resident of Maine when he negotiated for a position with Niotan.

John Lindell was a resident of Utah when he negotiated for a position as a consultant with defendant.  Carlos Rerat lived in Texas when he became a consultant for Niotan.  David Sanders was a resident of Illinois when he began negotiations with Niotan.  In addition, Kathy Sokat was a resident of either New Jersey or Florida, but not Pennsylvania, when she began negotiations about doing consulting work for defendant.

Neither Jim Fife, Robert Hard, John Lindell, Carlos Rerat, David Sanders, nor Kathy Sokat, were current Cabot employees or consultants when they began negotiations to do work for defendant.

Both Cabot and Niotan have entered into confidentiality agreements with its current and former employees.  Cabot has confidentiality agreements with all thirteen of its former employees.  Similarly, Niotan entered into numerous agreements

containing confidentiality requirements  with the employees and consultants it hired who were former Cabot employees.

The documents that contained confidentiality language had different titles, including Proprietary Information Agreement, Potential Employment Confidentiality Agreement, Consultant Confidentiality Agreement, Potential Consultant Confidentiality Agreement, Confidentiality Agreement, Consultant Agreement, and Employment Agreement.

Each of these documents were prepared by Niotan in Nevada.  All of the agreements contain Nevada choice of law provisions.  Some of the documents were sent to prospective employees or consultants who were living in Pennsylvania at the time including Santo Ferrarello, David Knudson, Lee Ruch, Dorran Schultz and Daniel White.

Niotan has specific policies contained in the various agreements listed above, specifying that employees are not to disclose confidential information, including trade secrets and proprietary information from prior employers.

<u>DISCUSSION</u>

There are two types of *in personam* jurisdiction, in the Commonwealth of Pennsylvania:  general and specific jurisdiction. "General jurisdiction is founded upon a defendant's general activities within the forum which evidence continuous and systematic contacts with the state.  Specific jurisdiction has a

more narrow scope and is focused upon the particular acts of the defendant which gave rise to the underlying cause of action." Hall-Woodford Tank Company v. R.F. Kilns, 698 A.2d 80, 82, (Pa.Super. 1997) (Citations omitted.)

Originally, it was unclear whether plaintiffs asserted jurisdiction based upon both general and specific jurisdiction. However, after clarification of the issue by my chambers prior to the scheduling of the hearing on this matter, plaintiffs' counsel Kevin M. Littman, Esquire, abandoned plaintiffs' claim for general jurisdiction.[7]  Accordingly, I do not address whether plaintiffs have established general jurisdiction under Pennsylvania law.

### Specific Jurisdiction

As stated above, Pennsylvania's long-arm statute allows for the exercise of jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution.  The United States Supreme Court has held that due process requires a non-resident defendant who is not present in the forum to "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95,

---

[7]     See Transcript of Motion Hearing before The Honorable James Knoll Gardner[,] United States District Judge on May 15, 2009 at pages 102-104.

102 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)).

The Supreme Court further defined the strictures of the Due Process Clause in holding that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958).

The United States Court of Appeals for the Third Circuit has described the due process analysis under International Shoe and its progeny as a two-pronged test: first, a court must determine whether there are minimum contacts; and second, whether the exercise of jurisdiction comports with "fair play and substantial justice". Mellon Bank, 960 F.2d at 1221-22.

Specific jurisdiction over a defendant can be found where the suit is related to, or "arises out of", the defendant's contacts with the forum. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 413, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). In the case of specific jurisdiction, the court's jurisdiction is based on the "relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683, 698 (1977).

Because this case involves allegations of intentional torts, if I find that defendant's contacts are lacking or that defendant's contacts with the forum would not otherwise satisfy the requirements of due process, the test that should be utilized is the one enunciated by the United States Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

In IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254 (1998) the United States Court of Appeals for the Third Circuit, interpreting Calder, set forth the following three-prong test in cases involving intentional torts; (1) defendant must have committed an intentional tort; (2) plaintiff must have felt the brunt of the harm caused by the tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and (3) defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. IMO Industries, 155 F.3d at 256.

Thus, in analyzing whether this court has personal jurisdiction over defendant I must first address the traditional test for specific jurisdiction. In the event that plaintiff fails to prove personal jurisdiction by a preponderance of the evidence, I then must analyze whether personal jurisdiction is

otherwise proper under what the parties refer to as the <u>Calder</u> "effects test".

<u>Plaintiff's residency</u>

As an initial matter, in <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) the United States Supreme Court stated:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at **residents** of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540-541. (Emphasis added)(Internal citations omitted).

Defendant Niotan did have some contacts with Pennsylvania residents Santo Ferrarello, Amir Hussain, David Knudson, Lee Ruch, Dorran Schultz and Daniel White as further discussed below.  However, plaintiff Cabot Corporation is not a Pennsylvania resident.

Cabot is organized under the laws of Delaware and has its principal place of business in Massachusetts.  Cabot does have a manufacturing facility in Boyertown, Berks County, Pennsylvania, but that facility is one of many that plaintiff has around the country and the world.  In prior cases in this

-25-

judicial district, Cabot has repeatedly established diversity of citizenship from Pennsylvania citizens.[8]

Furthermore, plaintiff and defendant have no connections with each other.  There are no contracts between them.  They do not do business with one another either directly or by any kind of joint venture.  In this lawsuit, plaintiff has sued defendant, not its former employees who worked and resided in Pennsylvania and are subject to Pennsylvania choice of law provisions in their agreements with plaintiff.

This case does not involve claims by the former Pennsylvania residents Santo Ferrarello, Amir Hussain, David Knudson, Lee Ruch, Dorran Schultz and Daniel White against defendant.  It involves claims by a non-resident (plaintiff Cabot) against another non-resident (defendant Niotan).

Plaintiff cites a number of cases in an effort to support its argument that defendant is subject to personal jurisdiction in Pennsylvania.  However, each case cited by plaintiff involves a plaintiff that is a citizen of the state where long-arm jurisdiction is sought to be invoked.[9]  Each

---

[8]     See Anthony v. Small Tube Manufacturing Corp., 2006-cv-4419 (E.D.Pa.)(Gardner, J.);   Kocher v. Cabot Corporation, 2005 cv-1536 (E.D.Pa)(Sanchez, J.); and Hoffman v. Cabot Corporation, 2005 cv-1536 (E.D.Pa.)(Sanchez, J.).

[9]     See Cabot's Opposition to Niotan's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue or, in the Alternative, Motion to Transfer, pages 9-12.

plaintiff in the cases cited by plaintiff is either a corporation organized under the laws of the state the court sits in or its principal place of business in located in that state.  In this case, plaintiff is neither a Pennsylvania corporation, nor is its principal place of business in Pennsylvania.

I am unaware of any authority, and the parties have provided none, indicating that a non-resident can invoke a state's long-arm statute against another non-resident.  Because plaintiff is not a resident of Pennsylvania, as that term is generally defined as it relates to corporations, I conclude that plaintiff, as a non-resident, may not invoke the long-arm statute of Pennsylvania to obtain jurisdiction over another non-resident in this court.

In the event that I am incorrect about my application of the Pennsylvania long-arm statute, I address the other ways that a plaintiff may exert personal jurisdiction over defendant.

<u>Minimum Contacts</u>

The contacts which defendant has with Pennsylvania can be summed up as follows.  Defendant was contacted by six residents of Pennsylvania, Santo Ferrarello, Amir Hussain, David Knudson, Lee Ruch, Dorran Schultz and Daniel White about employment with Niotan.  All these individuals, while they were Pennsylvania residents, had telephone contacts, and some had

-27-

additional e-mail contact, with defendant about becoming either employees of, or consultants with, Niotan.[10]

For the purpose of discussing possible employment with Niotan, Mr. White met with Niotan CEO John Crawley in Reading, Pennsylvania, while Mr. Crawley was on business for a separate company, Pacific Ore.

The employment with Niotan sought by all six of these individuals was to occur in Nevada.[11]  All six flew from Pennsylvania to Nevada for an interview with Niotan.  All six were sent various employment agreements, offers of employment or confidentiality agreements while they were still in Pennsylvania prior to commencing their employment in Nevada.  Plaintiff has not proven by a preponderance of the evidence where any of those agreements were executed, whether in Pennsylvania or Nevada.

Plaintiff contends in its Complaint that defendant has been recruiting its former employees and consultants who all owe a duty of confidentiality to plaintiff regarding information learned while working for, or with, plaintiff.  Plaintiff further contends that these former employees and consultants have shared information with defendant about the various processes, methods,

---

[10]     As noted above, Lee Ruch started with Niotan as a consultant and eventually became an employee.

[11]     I note that seven other consultants that were also former employees of plaintiff, specifically, Don Bates, Jim Fife, Robert Hard, John Lindell, Carlos Rerat, David Sanders and Kathy Sokat, may have conducted some of their activities for Niotan from their respective residences, and not in Nevada.  However, none of these consultants performed any work for Niotan in Pennsylvania.

techniques and other information relating to the production of
tantalum powder and related products.

However, plaintiff provides no specificity regarding
which former employees have provided what information about what
subjects and when that information may have been provided.  As
noted above, plaintiff may not rely on bare pleadings alone to
withstand defendant's Rule 12(b)(2) motion.

Once a motion is made, "plaintiff must respond with
actual proofs, not mere allegations." Atiyeh, supra.  Moreover,
as here, if the court conducts an evidentiary hearing, plaintiff
has a more substantial burden of proving that personal
jurisdiction is proper by a preponderance of the evidence.  Id.

Each case where personal jurisdiction is an issue must
be analyzed on the facts of the particular case.  There is no one
set of facts that guarantees any specific outcome.  "Decisions in
these long-arm cases are not easy, and there is a reason for the
difficulty." Jacobs v. Lakewood Aircraft Service, Inc.,
493 F.Supp. 46, 50 (E.D.Pa. 1980)(Lord, III, J.).

Based on the foregoing, I conclude that plaintiffs have
not met their initial burden of establishing sufficient minimum
contacts to support a finding of specific jurisdiction under the
Pennsylvania Long Arm statute.  Specifically, I find that
defendant did not initiate contact with plaintiff's former
employees in Pennsylvania.  To the contrary, the individual

former employees who were Pennsylvania residents contacted Niotan to seek out employment.  The constitutional touchstone in these cases is whether defendant purposefully established minimum contacts in the forum state.  Burger King, 471 U.S. at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542.

Clearly, defendants who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.  Burger King, 471 U.S. at 473, 105 S.Ct. at 2182, 85 L.Ed.2d at 541 (citing Travelers Health Association v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154, 1161.

However, plaintiff has not established by a preponderance of the evidence that defendant entered into a contract with any Pennsylvania resident who is involved in any issue in this litigation.  The employment or confidentiality agreements between Cabot and its former employees are not at issue and neither are the agreements between those former employees and Niotan.

Finally, the contacts between Niotan and the former Cabot employees in negotiating employment agreements involving employment that was to occur in Nevada, are insufficient contacts to establish long-arm jurisdiction.

-30-

Accordingly, based upon the foregoing, I conclude that plaintiff has not met its initial burden of establishing sufficient minimum contacts to support a finding of specific jurisdiction under the Pennsylvania Long Arm statute.

In the event I am mistaken, I further conclude that hiring former employees who initiated contact with defendant in Nevada for employment in Nevada, having one meeting with one prospective employee and participating in a few e-mails and phone calls with the prospective employees is not a "sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum." Kulko v. California Superior Court, 436 U.S. 84, 91, 98 S.Ct. 1690, 1697, 65 L.Ed.2d 132, 141 (1978).

### Calder Test

Because this case involves allegations of intentional torts, and because I find that defendant's contacts are lacking, and that defendant's contacts with the forum would not otherwise satisfy the requirements of due process, I must next apply the three-prong Calder test: (1) defendant must have committed an intentional tort; (2) plaintiff must have felt the brunt of the harm caused by the tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and (3) defendant must have expressly aimed his tortious conduct at the forum, such that the forum can

be said to be the focal point of the tortious activity.  IMO
Industries, 155 F.3d at 256.

For purposes of this motion, defendant conceded, and I
agree, that plaintiff has asserted claims for intentional torts.
Thus the first element of Calder is satisfied.

Next, plaintiff must have felt the brunt of the harm
caused by the tort in the forum, such that the forum can be said
to be the focal point of the harm suffered by the plaintiff as a
result of the tort.  Regarding this prong, plaintiff contends
that because the global operations center of its tantalum
business is located in Boyertown, Pennsylvania and because it
alleges that many of the trade secrets involved were developed in
Boyertown, the brunt of the harm for the misappropriation of
those trade secrets will be felt in Boyertown.

Defendants contend that the brunt of the harm that
plaintiff felt, if any, from its allegedly tortious conduct is
the place where plaintiff is a resident.  In this case, defendant
argues that plaintiff is a resident of either its state of
incorporation (Delaware), or where it maintains its principal
place of business (Massachusetts).

Both parties cite the Third Circuit's ruling in
Paolino v. v. Channel Home Centers, 668 F.2d 721 (3d Cir. 1981)
for the proposition that any trade secrets which Cabot possesses
are possessed where Cabot is a resident.  I agree with the

parties that <u>Paolino</u> clearly provides that because a trade secret cannot have a physical situs, the state of residence of the person or entity that developed and protected the secret is the place where the trade secret also resides.

As noted by defendant in its proposed conclusions of law,[12] in <u>Pennsylvania Insurance Guaranty Association v. Charter Abstract Corporation</u>, 790 F.Supp 82 (E.D.Pa. 1992), former Chief Judge Louis C. Bechtle held that it is a settled rule that, "insofar as a corporation can be considered a resident of a state, it is a resident of the state in which it is incorporated, and no other."  790 F.Supp at 85.

However, Judge Bechtle went further and stated that where the term resident is not clearly defined by statute, the definition of "resident" becomes one of statutory construction. In such situations, residency must be determined by the context, purpose, and objective of the statute in which the term is used as well as the extent and character of the business the corporation transacts within the state.

For jurisdiction purposes, federal law provides that a corporation is deemed to be a citizen of the state of incorporation and the state where it has its principal place of business.  <u>See</u> 28 U.S.C. § 1332(c)(1).  Thus, applying Judge Bechtle's reasoning, I conclude that the place of incorporation

---

[12]   See Defendant's Proposed Finding[s] of Fact and Conclusions of Law filed July 1, 2009, page 27, Proposed Conclusion of Law 13.

is not the only possible place of residence, and that residency should not be the end of the analysis.

For the purposes of where a corporation may hold its trade secrets, I find it logical to conclude that it may be either the place of incorporation or the location of its principal place of business.  In many circumstances, that may be the same state.

However, in a case like this where plaintiff has numerous facilities all around the world, I find it illogical and cumbersome to create a rule that would place the situs of trade secrets wherever a party alleges that the secret was developed or is used because, as in this case, it may be used in numerous locations.

Plaintiff has tantalum powder production facilities in both Boyertown, Pennsylvania and Aizu, Japan.  I expect that the trade secrets developed for the production of tantalum powder are used in both facilities.  Thus, because trade secrets by their nature cannot have a physical situs, it is unworkable to have multiple locations.

The law in this circuit is clear that the location of trade secrets is where plaintiff resides.  <u>Paolino</u>, <u>supra</u>.  For these purposes, I conclude that plaintiff resides in Delaware and Massachusetts.

Applying this determination to the issue of whether the brunt of the harm caused by the tort was in this forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort, I conclude that Pennsylvania is not the location of the brunt of the harm. Because plaintiff possesses its trade secrets in Delaware or Massachusetts, it cannot feel the brunt of the misappropriation of those trade secrets in Pennsylvania where it is not a resident.

Furthermore, regarding the final aspect of the Calder, effects test, that defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity, I conclude that defendant has not expressly aimed its allegedly tortious conduct at Pennsylvania.

In IMO Industries, the Third Circuit made clear that plaintiff must do more than simply establish that defendant knew that plaintiff was located in a particular forum and, thus, presumably feels the brunt of the injury in that forum. Rather, the requirement of Calder is that defendant must have expressly aimed its tortious activity at the forum. "The defendant must 'manifest behavior intentionally targeted at and focused on' the forum for Calder to be satisfied." IMO Industries, 155 F.3d at 265. (Internal citations omitted).

-35-

Regarding where defendant directed its allegedly tortious activities, I find instructive the decision of District Judge Robert W. Pratt of the United States District Court for the Southern District of Iowa, Central Division, in EFCO Corp. v. Aluma Systems, USA, Inc., 983 F.Supp 816 (S.D. Iowa 1997).

In EFCO Corp., Judge Pratt explained that the "physical act of theft is certainly aimed at the place of the theft, but the reasonable expectation and understandings in the mind of the thief is that he takes something that belongs to someone else and that the *effect* of his theft will be where that someone is located." 983 F.Supp. at 823. (Emphasis in original).

The import of Judge Pratt's statement on the facts of this case is that if defendant misappropriated plaintiff's trade secrets, the place where the trade secrets were misappropriated is the place where plaintiff is located. As noted above, plaintiff is a resident of Delaware and Massachusetts, not Pennsylvania. Thus, the focal point of where defendant directed its activities is where plaintiff's trade secrets are located and from where they were presumably stolen. Based on my determinations earlier in this Opinion, that place is either Delaware or Massachusetts, not Pennsylvania.

Accordingly, because I conclude that plaintiff has not satisfied either the second or third prong of the Calder effects test, I find that plaintiff has not established by a

preponderance of the evidence that this court has personal jurisdiction over defendant.

However, for the reasons expressed below, I decline to dismiss plaintiffs' Complaint.  Rather, I transfer this matter to the United States District Court for the District of Nevada.

### Dismissal for Improper Venue

Defendant argued that if the court did not dismiss this action for lack of personal jurisdiction, then I should dismiss the case for improper venue pursuant to 28 U.S.C. § 1391(a)(1). Because I have determined that there is no personal jurisdiction in this case, defendant's motion to dismiss for improper venue is rendered moot.  However, as noted below, I am transferring this action to the United States District Court for the District of Nevada, the venue which defendant argued is the proper venue for this action.

### Transfer of Venue

In its motion to dismiss, defendant filed an alternative motion to transfer venue.  Even though I grant defendant's motion to dismiss for lack of personal jurisdiction above, and transfer this action based upon other considerations below, for the purpose of possible appellate review, I conclude that even if I had determined that this court has personal jurisdiction over defendant, I would nonetheless have transfered

venue of this matter to the United States District Court for the District of Nevada.

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). Section 1404(a) applies to cases where venue would be proper in both the original and requested locations. Jumara v. State Farm Insurance Company, 55 F.3d 873, 878 (3d Cir. 1995).

The moving party bears the burden of establishing that a transfer would be favorable. "[U]nless the balance of convenience of the parties is *strongly* in favor of the defendant, the plaintiff's choice of forum should prevail." While it is within the district court's discretion to grant a request for transfer of venue, such requests are not to be liberally granted. Shutte v. Armco Steel Corporation, 431 F.2d 22, 25 (3d Cir. 1970) (emphasis added).

Courts are required to weigh several relevant private and public factors in considering whether to grant a motion to transfer. The private factors include: (1) plaintiff's choice of forum; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) convenience of witnesses, only to the extent that they may be unavailable for

trial in one of the fora; and (6) the location of books and records, only to the extent that they could not be produced in one of the fora.  Jumara, 55 F.3d at 879.

The public factors include: (1) enforceability of the judgment; (2) practical considerations which could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Jumara at 879-880.

Private Factors

Of the private factors outlined in Jumara, the plaintiff's choice of forum is to be given the greatest weight. However, the deference given to plaintiff's choice is to be reduced when the facts giving rise to the action occurred in another district.  See, Cameli v. WNEP-16 The News Station, 134 F.Supp.2d 403, 405 (E.D.Pa. 2001).  The incident giving rise to this action occurred in the District of Nevada.  If defendant misappropriated any trade secrets, it happened at their facility in Nevada.  Therefore, plaintiff's choice of forum in the Eastern District of Pennsylvania is "a factor worthy of consideration, but not a paramount one."  Id.

Overall, the private interest factors slightly favor defendant. The factor of defendant's preference obviously weighs in favor of transferring the action to the District of Nevada as does the factor of whether the claim arose elsewhere.

The convenience of the parties weighs slightly in favor of defendant. Plaintiff is a Delaware corporation with its principal place of business in Massachusetts and contends that the Eastern District of Pennsylvania is a less burdensome forum for it than the District of Nevada because it has a facility in Boyertown, Berks County, Pennsylvania, which is located in this judicial district. Plaintiff is a multi-national corporation with 51 locations around the world. It has suffered some because of the current economic times but is clearly solvent.

Defendant is a Nevada corporation with its principal place of business located in Nevada. It contends that while not impossible, it will be hard pressed to properly defend this action in this district. Defendant's counsel is from California. Defendant's CEO John Crawley testified that at the time of the hearing that defendant had only $10,000 in its bank account, owed its counsel money for the defense of this action and that just coming to Pennsylvania for the within hearings was a financial burden on the company. Accordingly, defendant will be inconvenienced by having the action remain here.

-40-

Thus, it appears that hearing this action in the Eastern District of Pennsylvania is not convenient for both parties.

The next private factor, the convenience of witnesses, is more problematic. The convenience of non-party witnesses is a particularly significant factor. <u>Paul Green School of Rock Music Franchising, LLC v. Rock Nation, LLC</u>, 2009 WL 129740 at *4 (E.D.Pa. Jan. 13, 2009)(Joyner, J.). Plaintiff's witnesses are mostly located in this district. However, many of defendant's witnesses are located in Nevada, and other witnesses, including the current and former consultants are located in numerous states including Illinois, Maine, Montana, New Jersey and Utah. The parties have not specified who all the witnesses are, and who are the witnesses necessary for this action. However, based upon the residences of the thirteen former Cabot employees, it appears that only three of them, Santo Ferrarello, Amir Hussain and Kathy Sokat live east of the Mississippi River.

Defendant claims that a transfer of this action is far more convenient for such witnesses. Plaintiff argues that it is not anymore burdensome for witnesses to travel to this district. It is not clear, then, that allowing the case to remain in the Eastern District of Pennsylvania will be a greater inconvenience for witnesses.

The location-of-books-and-records factor weighs in favor of a transfer.  Defendant has a place of business in Nevada and maintains records there.  Defendant contends that because plaintiff is transferring its tantalum powder processing to Aizu, Japan, its records may be located in numerous places including Japan, Massachusetts or Delaware.  Plaintiff asserts that most of its records are located in Boyertown, Pennsylvania.  Therefore, this factor militates slightly in favor of a transfer of venue.

Overall, I find that plaintiff's choice of forum weighs slightly against transfer; location of records weighs slightly in favor of transfer; defendant's preference and the location of the events giving rise to the claim weigh more heavily in favor of transfer; and the convenience of witnesses is a neutral factor.

<u>Public Factors</u>

The public factors support transferring this action from the Eastern District of Pennsylvania.  The factors of the enforceability of the action, public policies in each forum, and administrative difficulties are largely inapplicable to this analysis.  The local-interest factor weighs in favor of transfer, as the events giving rise to this action took place within the District of Nevada because that is where the misappropriation of trade secrets, if any, occurred.  The Eastern District of Pennsylvania, on the other hand, has little connection with the matter other than the fact that plaintiff, who is not a resident

-42-

of Pennsylvania, has a manufacturing plant located in Pennsylvania.

The practical-considerations factor is neutral on the issue of transfer.  Whether the case remains here or is transferred to the District of Nevada, it has not progressed on the merits.

The interest of the prompt and efficient administration of justice is not affected by this matter remaining here or being transferred.

Defendant chose early in this action to seek a transfer to Nevada of this case brought in the Eastern District of Pennsylvania.  This fact alone suggests that it may be in the "interest of justice", as set forth in 28 U.S.C. § 1404(a), to transfer this matter.

Section 1404(a) grants a judge discretion to transfer the venue of an action when it is in "the interest of justice" to do so.  Here, the interest of justice are served in having this matter heard in the appropriate forum when time and resources have not yet been expended in the Eastern District of Pennsylvania on the merits.

The familiarity of the trial judge with applicable law is a neutral factor.  The Nevada Uniform Trade Secrets Act is nearly indistinguishable from the Pennsylvania Uniform Trade

Secrets Act.[13]   In the absence of contrary authority, this factor does not lend itself for or against transfer.

In sum, the public interest factors slightly weigh in favor of transfer.   Three of the six public interest factors are irrelevant to this discussion.   Familiarity of the trial judge and the practical considerations are both neutral factors.   Local interest weights in favor of transfer.

Considering the totality of these factors, I conclude that transfer to the District of Nevada is appropriate in this case.   Because deference to plaintiff's choice of forum is reduced, the private factors favor the defendant.   However, the public interest or "interest of justice" are mostly not applicable or neutral with one factor slightly in favor of transfer.   Taking all the factors together, the scales tip in the favor of defendant.   Thus, transfer is appropriate.

Accordingly, if I had found there to be personal jurisdiction over defendant, I would nonetheless have transferred this Matter to the District of Nevada pursuant to 28 U.S.C. § 1404(a).

## Transfer of Jurisdiction

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest

---

[13]   Compare Nev.Rev.Stat.Ann. §§ 600A.010-600A.100 (2011) to 12 Pa.C.S.A. §§ 5301-5308.

of justice, transfer such case to any district or division in
which it could have been brought."  28 U.S.C. § 1406(a).

In addition, transfer to cure want of jurisdiction is
also appropriate under Section 1631 which allows the court to
transfer a case, "if it is in the interest of justice," to "any
other such court in which the action or appeal could have been
brought at the time it was filed or noticed."  28 U.S.C. § 1631.
As noted above, defendant argued that venue in this matter should
be transferred to the United States District Court for the
District of Nevada.

Because this case involves issues regarding the statute
of limitations, I find that the interests of justice are better
served by transferring this case to an appropriate court, rather
than exercising my discretion to simply dismiss the action.  I
conclude that this is an appropriate exercise of my discretion in
support of ensuring that "justice defeating technicalities" such
as expiration of the statute of limitations does not penalize
plaintiff.  See TJF Associates, LLC v. Rotman, 2005 U.S.Dist.
LEXIS 11943 at *18 (E.D.Pa. June 17, 2005)(Yohn, J.) (citing
Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 .Ct. 913, 8 L.Ed.2d 39
(1962)).

Accordingly, while I deny defendant's request to
dismiss this action, I would have nonetheless granted defendant's

-45-

alternative request.  Thus, I transfer this matter to the United
States District Court for the District of Nevada.

<u>CONCLUSION</u>

For all of the foregoing reasons, I conclude that there
is no personal jurisdiction over defendant in this forum.
However, I deny defendant's motion to dismiss but grant
defendant's motion to transfer.  Accordingly, I transfer this
matter to the United States District Court for the District of
Nevada.