**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GLOBAL ADVANCED METALS USA, INC., )<br>)<br>Plaintiff, )<br>) 3:11-cv-00793-RCJ-VPC<br>vs. )<br>)<br>KEMET BLUE POWDER CORP., ) **ORDER**<br>)<br>Defendant. )<br>_____ ) | |

This case arises out of the alleged use of Plaintiff's trade secrets by Defendant. Defendant has moved for partial judgment on the pleadings. For the reasons given herein, the Court grants the motion. Also before the Court is Defendant's motion to review the magistrate judge's order denying its request to order Plaintiff to identify its trade secrets before demanding discovery concerning their alleged misappropriation. The Court denies that motion.

**I.     FACTS AND PROCEDURAL HISTORY**

Cabot Corp. is a Delaware corporation with its principal place of business in Massachusetts that produced Tantalum powder and related products at its factory in Pennsylvania. (Compl. ¶¶ 1, 5, Apr. 9, 2008, ECF No. 1). The processes, methods, and techniques (the "Processes") Cabot developed for Tantalum production are not generally known or readily ascertainable, and Cabot made numerous efforts to maintain the secrecy of the Processes; in other words, the Processes are trade secrets. (*See id.* ¶¶ 6–10).

Niotan, Inc. was a Nevada corporation with its principal place of business in Nevada. (*Id.* ¶ 2). Niotan began operating a facility at the Comstock industrial Park in Mound House, Nevada

in 2007, which facility is permitted by the Nevada authorities to produce 200 tons of Tantalum powder per year. (*Id.* ¶¶ 11–12). Niotan hired former Cabot employees (the "Employees") to consult it on Tantalum production in connection with the development of the Mound House facility. (*Id.* ¶ 14). The Employees owed Cabot a duty of confidentiality under the terms of written agreements but nevertheless shared confidential information about the Processes with Niotan, and Niotan was aware of the Employees' former employment with Cabot, the fact that the Processes were trade secrets, and the fact that the Employees had signed confidentiality agreements prohibiting dissemination thereof. (*Id.* ¶¶ 15–18). Niotan hired the Employees for the express purpose of acquiring knowledge of the Processes. (*Id.* ¶ 19). As a result, Niotan was able to replicate the quality of Cabot's Tantalum powder, reduce its production costs, and begin production far earlier than otherwise would have been possible. (*Id.* ¶ 20).

Plaintiff sued Defendant in 2008 in the U.S. District Court for the Eastern District of Pennsylvania on six state law causes of action: (1) Trade Secret Misappropriation; (2) Tortious Interference with Contractual Relations; (3) Conversion; (4) Aiding and Abetting a Breach of Fiduciary Duty; (5) Unfair Competition and Unfair and Deceptive Trade Practices; and (6) Unjust Enrichment. Cabot demanded a jury trial and prayed for injunctive relief, restitution for unjust enrichment, and attorney's fees and costs. After filing the Complaint, Cabot Corp. sold the relevant portion of its business to Global Advanced Metals USA, Inc. ("GAM"), which company has been substituted as Plaintiff, and Kemet Electronics Corp. acquired Niotan as a subsidiary and changed Niotan's name to Kemet Blue Powder Corp. ("Kemet"), which company has been substituted as Defendant. The case was transferred to this District in 2011.

## II.     LEGAL STANDARDS

### A.     Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standards governing a Rule 12(c)

1  motion are the same as those governing a Rule 12(b)(6) motion. *See Dworkin v. Hustler*
2  *Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference . . . is the time of
3  filing.  [T]he motions are functionally identical . . . .").

4  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star*
5  *Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to
6  dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the
7  complaint does not give the defendant fair notice of a legally cognizable claim and the grounds
8  on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering
9  whether the complaint is sufficient to state a claim, a court takes all material allegations as true
10 and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792
11 F.2d 896, 898 (9th Cir. 1986).  A court, however, is not required to accept as true allegations that
12 are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell*
13 *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause
14 of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a
15 claim is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations
16 omitted).

17 "Generally, a district court may not consider any material beyond the pleadings in ruling
18 on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the
19 complaint may be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,
20 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged
21 in a complaint and whose authenticity no party questions, but which are not physically attached
22 to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without
23 converting it into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.
24 1994).  Also, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of
25 public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Otherwise, if the district court considers materials outside of the pleadings, the motion is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**B.  Rule 72(a)**

Rule 72(a) permits a district court judge to modify or set aside a magistrate judge's non-dispositive ruling that is clearly erroneous or contrary to law:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision.  A party may serve and file objections to the order within 14 days after being served with a copy.  A party may not assign as error a defect in the order not timely objected to.  The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a); *see also* Local R. IB 3-1(a).  "Under Rule 72(a), '[a] finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Rafano v. Patchogue-Medford Sch. Dist.*, No. 06-CV-5367 (JFB)(ARL), 2009 WL 789440, at *12 (E.D.N.Y. Mar. 20, 2009) (quoting *Burgie v. Euro Brokers, Inc.*, No. 05 Civ. 0968(CPS)(KAM), 2008 U.S. Dist. LEXIS 71386, at *18 (E.D.N.Y. Sept. 5, 2008) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993))).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.*

**III.  ANALYSIS**

**A.  Motion for Judgment on the Pleadings**

After jurisdictional discovery, U.S. District Judge James K. Gardner denied a motion to dismiss but transferred the case to this District. (*See* Trans. Order, Sept. 30, 2011, ECF No. 69). The motion to transfer was based alternatively upon 28 U.S.C. §§ 1404(a) and 1406(a), (*see* Mot.

16–18, Sept. 29, 2008, ECF No. 7), but the written opinion based the transfer upon § 1406(a) to cure a lack of personal jurisdiction over Defendant, (*see* Op. 2, Sept. 30, 2011, ECF No. 68), so Nevada's choice-of-law rules apply, *see Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966–67 (9th Cir. 1993).

Choice of law rules are *Erie*-substantive, so a federal court applies the choice-of-law rules of the state courts in the district where it sits. *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941). Nevada recently adopted the "most significant relationship" ("MSR") test of the Restatement (Second) of the Conflict of Laws § 145 for tort actions, unless a more specific section of the Restatement applies. *See Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cnty. of Clark*, 134 P.3d 111, 116 (Nev. 2006). The MSR test of § 145 will therefore apply unless the tort at issue is directly spoken to by another section of the Restatement. Finally, Nevada determines choice of law by cause of action as a whole, not via the doctrine of dépeçage, under which choice of law on each separate issue within each cause of action is determined separately. *See Lucarelli ex rel. Taylor Estate v. DVA Rental Healthcare, Inc.*, No. 08-0406, 2008 WL 5586615, at *3 (W.D. La. Oct. 24, 2008) (citing *id.* at 119)). Because the courts of Nevada do not employ the doctrine of dépeçage, for the purposes of whether certain causes of action are preempted by a trade secrets claim, the Court will perform the choice-of-law analysis with respect to a trade secrets claim itself, the preemptive effect of such a claim upon other claims being attached most closely to the trade secrets claim itself and not to other claims, which may or may not be preempted under a given preemption rule.

The Restatement (Second) of the Conflict of Laws does not provide any particular rule for trade secrets appropriation torts, so the Court must apply the MSR test. *See Gen. Motors Corp.*, 134 P.3d at 116. The Second Restatement states a "general principal" for tort claims:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles

stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a) the place where the injury occurred,
    (b) the place where the conduct causing the injury occurred,
    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
    (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). The principles stated in § 6 are:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

*Id.* § 6(2)(a)–(g).

Here, the injury occurred in Massachusetts, where Plaintiff had its headquarters, and in Pennsylvania, where Plaintiff had its Tantalum factory. However, Cabot claimed to be a global corporation on its own website, and claimed to have manufacturing locations all over the United States, Europe, Mid-East, and Far East. This factor does not favor any particular state's choice of law. Next, the conduct causing the injury is alleged to have occurred in Nevada, where the Employees broke their confidentiality pledges and disclosed the Processes to Defendant, and where Defendant manufactured Tantalum using that knowledge. This factor favors Nevada law. Next, Defendant is a citizen of a state where it is protected from trade-secret-related claims where a separate claim for trade secret misappropriation lies. Plaintiff is a citizen of one state where it may be prevented from suing on common law claims related to a trade secrets claim (under the Delaware Uniform Trade Secrets Act ("DUTSA")) and is a citizen of another state

1  where it is not so prevented (Massachusetts).  This factor favors Defendant, particularly in light
2  of the fact that Plaintiff is a global corporation with no unique ties to any particular forum,
3  whereas Defendant apparently operates only in Nevada.  Finally, the relationship between the
4  parties is centered in Nevada, because the alleged misappropriation of trade secrets, which is the
5  only connection between the parties, is alleged to have occurred here.  The Court therefore finds
6  that the substantive law of Nevada controls.

7  The Nevada Uniform Trade Secrets Act ("NUTSA") "displaces conflicting tort,
8  restitutionary, and other law of this state providing civil remedies for misappropriation of a trade
9  secret." Nev. Rev. Stat. § 600A.090(1).  On their face then, the second through fourth claims for
10 Tortious Interference with Contractual Relations, Conversion, and Aiding and Abetting a Breach
11 of Fiduciary Duty are preempted, as these are all torts base upon the alleged misappropriation of
12 trade secrets.  The sixth claim for Unjust Enrichment, which is based upon the alleged
13 misappropriation of trade secrets, is also preempted under the statute. *See Hutchison v. KFC*
14 *Corp.*, 809 F. Supp. 68, 70 (D. Nev. 1992) (Pro, J.).  Finally, the fifth claim for Unfair
15 Competition and Unfair and Deceptive Trade Practices (Chapter 598A under Nevada law) is also
16 preempted, because the alleged violations came about "by misappropriating Cabot's trade
17 secrets." (Compl. ¶ 54).  In fact each of the preempted causes of action contains language of
18 "trade secrets" or "confidential information." (*See* Compl. ¶¶ 37, 42, 50–51, 54, 56).  The Court
19 therefore grants the motion for judgment on the pleadings.  Plaintiff may amend to add a claim
20 for breach of contract and seeking injunctive relief against the Employees and Defendant based
21 upon an alleged breach of a confidentiality agreement.

22 Plaintiff correctly argues that the choice-of-law analysis must precede the preemption
23 analysis, but then also argues that the choice-of-law analysis cannot proceed before discovery is
24 complete, because it requires the consideration of facts.  In some cases, this might be the proper
25 approach. For example, consider an automobile accident on a road that straddles a state line

where it is unclear on which side of the border the negligence and injury occurred. In an extreme case, a two-stage trial may even be required: one stage to determine those facts that will inform the jury instructions on the liability issues to be determined at the second stage. In a less extreme case, there may be a dispute over the residence of a plaintiff such that a court cannot assess where an injury occurred. Or there may be a dispute over the location where a contract was signed or where it was mainly performed. There are no such disputes here. Neither party disputes the location of the Plaintiff and Defendant factories or the parties' states of citizenship. The only dispute is over where the harm was felt and where the relationship between the parties was centered. But in the present case, the underlying facts are not in dispute.

Plaintiff's alternative argument that the injury was felt primarily in Pennsylvania because "the trade secrets at issue in this case were developed at or for use at the [Pennsylvania] facility" cannot be taken seriously. The only connection Pennsylvania has to the case is that Plaintiff's former Tantalum factory was located there. But the only reason the Employees ever began working for Defendant is because Plaintiff closed that factory, making it impossible for Plaintiff to feel any harm there (unless Plaintiff has some other factory, headquarters, etc. in Pennsylvania, which Plaintiff does not appear to allege). Plaintiff's very *abandonment* of the State of Pennsylvania was in fact one cause of Plaintiff's injury, i.e., Defendant's hiring of the Employees. Because an effect cannot precede its own cause, Plaintiff cannot have felt injury in Pennsylvania based upon Defendant's hiring of the Employees. The facts leading to this deduction are undisputed and require no discovery. According to Plaintiff's own Complaint, if Plaintiff hadn't left Pennsylvania, the alleged injury would never have occurred and would therefore never have been felt (in any jurisdiction).

Plaintiff's argument that the alleged misappropriation of trade secrets occurred in Pennsylvania, not in Nevada, is somewhat better but still weak. Plaintiff argues that the Employees' wrongdoing occurred when they "walked out of the door" in Pennsylvania with the

1  trade secrets that they would eventually import to Defendant in Nevada. The Court believes that
2  a better view is that the secrets were misappropriated (if they were) at the place where they were
3  divulged and utilized (Nevada). Most of the cases Plaintiff cites in support of its position are
4  factually distinguishable from the present case, e.g., where employees leave a company that
5  *remains* in the state of former employment. Moreover, the Employees who "walked out the
6  door" in Pennsylvania,[1] are not parties. Only Kemet (formerly Niotan) is a party, and Plaintiff
7  does not allege that either of these companies obtained the secrets in Pennsylvania. Even if they
8  had, there is simply no harm plausibly alleged in Pennsylvania.

9  **B.     Motion to Review Magistrate Judge's Order**

10  Defendant requested a protective order preventing Plaintiff from obtaining any trade-
11  secret-related discovery until Plaintiff has identified with sufficient detail the trade secrets it
12  alleges Defendant misappropriated. Plaintiff argued that because of the breadth of the trade
13  secrets at issue, it could not identify all of the secrets related to the design and construction of the
14  Mount House plant. Defendant argued that it would be forced to permit its competitor to fish
15  through its own trade secrets via discovery if Plaintiff were not first made to identify the alleged
16  trade secrets at issue, that neither the Court nor Defendant could evaluate the relevance of
17  discovery requests until Plaintiff sufficiently identified the trade secrets at issue, that Defendant
18  could not prepare a defense until it understood the nature of the allegations, and that Plaintiff
19  might use Defendant's trade secrets uncovered during discovery to define or describe its own
20  alleged trade secrets in this case after the fact. Plaintiff responded that it was unreasonable to
21  require it to list every trade secret allegedly misappropriated in the design of an entire plant and
22  that a stipulated protective order would protect the trade secrets from dissemination beyond the

---

[1] Plaintiff's colloquialism implies that the Employees left a Plaintiff company behind. A better analogy in this case would be to describe the Employees as having been "stranded outside a locked door of an empty factory" in Pennsylvania.

1  parties. The parties both cited to a similar case from this District. In *Montgomery v. eTreppid*
2  *Techs., LLC*, No. 3:06-CV-0056-PMP (VPC), 2008 WL 2277118 (D. Nev. May 29, 2008)
3  (Cooke, Mag. J.), the counterplaintiff had countersued for misappropriation of trade secrets. The
4  facts were similar to those in this case: a former employee of the counterplaintiff had taken trade
5  secrets and shared them with the counterdefendant when he left the company. The
6  counterdefendant argued that the counterplaintiff could not have discovery on the trade secrets
7  issues until it identified the trade secrets. The magistrate judge in that case held that the
8  counterplaintiff was not required to initially identify the trade secrets because they were
9  allegedly in the sole possession of the employee.

10  Here, the magistrate judge denied the requirement for Plaintiff to identify its trade secrets
11  because of their voluminosity. The magistrate judge noted that a listing of every trade secret
12  would draw an objection from Defendant that they must be narrowed, leading to additional
13  discovery disputes and delays, and that a protective order against disclosure would protect
14  Defendant's interests.

15  Defendant asks the Court to review the order denying its request for Plaintiff to identify
16  its trade secrets before requesting discovery on the issue. The Court finds that the magistrate
17  judge did not make any clear error of law in denying Defendant's request. The magistrate judge
18  has broad discretion in ordering particular discovery.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Judgment on the Pleadings (ECF No. 113) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Review Magistrate Judge's Order (ECF No. 127) is DENIED.

IT IS SO ORDERED.

DATED this 6th day of September, 2012.

_____
ROBERT C. JONES
United States District Judge