1
2
3
4          **UNITED STATES DISTRICT COURT**
5          **DISTRICT OF NEVADA**
6
7  GLOBAL ADVANCED METALS USA, INC.,          )
                                              )
            Plaintiff,                        )
8                                             )          3:11-cv-00793-RCJ-VPC
       vs.                                    )
9                                             )
   KEMET BLUE POWDER CORP.,                   )          **ORDER**
10                                            )
            Defendant.                        )
11  _____  )

12         This case arises out of Defendant's alleged use of Plaintiff's trade secrets in designing

13  and operating a Tantalum powder factory.  Pending before the Court is Plaintiff's Motion for

14  Reconsideration (ECF No. 173).  For the reasons given herein, the Court denies the motion.

15  **I.     FACTS AND PROCEDURAL HISTORY**

16         Cabot Corp. is a Delaware corporation with its principal place of business in

17  Massachusetts that produced Tantalum powder and related products at its factory in

18  Pennsylvania. (Compl. ¶¶ 1, 5, Apr. 9, 2008, ECF No. 1).  The processes, methods, and

19  techniques (the "Processes") Cabot developed for Tantalum production are not generally known

20  or readily ascertainable, and Cabot made numerous efforts to maintain the secrecy of the

21  Processes; in other words, the Processes are trade secrets. (*See id.* ¶¶ 6–10).

22         Niotan, Inc. was a Nevada corporation with its principal place of business in Nevada. (*Id.*

23  ¶ 2).  Niotan began operating a facility at the Comstock industrial Park in Mound House, Nevada

24  in 2007, which facility is permitted by the Nevada authorities to produce 200 tons of Tantalum

25  powder per year. (*Id.* ¶¶ 11–12).  Niotan hired former Cabot employees (the "Employees") to

consult it on Tantalum production in connection with the development of the Mound House facility. (*Id.* ¶ 14). The Employees owed Cabot a duty of confidentiality under the terms of written agreements but nevertheless shared confidential information about the Processes with Niotan, and Niotan was aware of the Employees' former employment with Cabot, the fact that the Processes were trade secrets, and the fact that the Employees had signed confidentiality agreements prohibiting dissemination thereof. (*Id.* ¶¶ 15–18). Niotan hired the Employees for the express purpose of acquiring knowledge of the Processes. (*Id.* ¶ 19). As a result, Niotan was able to replicate the quality of Cabot's Tantalum powder, reduce its production costs, and begin production far earlier than otherwise would have been possible. (*Id.* ¶ 20).

Plaintiff sued Defendant in 2008 in the U.S. District Court for the Eastern District of Pennsylvania on six state law causes of action: (1) Trade Secret Misappropriation; (2) Tortious Interference with Contractual Relations; (3) Conversion; (4) Aiding and Abetting a Breach of Fiduciary Duty; (5) Unfair Competition and Unfair and Deceptive Trade Practices; and (6) Unjust Enrichment. Cabot demanded a jury trial and prayed for injunctive relief, restitution for unjust enrichment, and attorney's fees and costs. After filing the Complaint, Cabot Corp. sold the relevant portion of its business to Global Advanced Metals USA, Inc. ("GAM"), which company has been substituted as Plaintiff, and Kemet Electronics Corp. acquired Niotan as a subsidiary and changed Niotan's name to Kemet Blue Powder Corp. ("Kemet"), which company has been substituted as Defendant. The case was transferred to this District in 2011.

The Court has granted a judgment on the pleadings in favor of Defendant as to the second through sixth claims as preempted under Nevada law after a choice-of-law analysis in favor of Nevada law. Plaintiff has asked the Court to reconsider dismissal, arguing that the Court's choice-of-law analysis was based upon a misunderstanding of fact, i.e., that Plaintiff's Tantalum factory in Pennsylvania, from which Defendant's employees had been laid off, had shut down.

///

1    **II.    LEGAL STANDARDS**

2         A court may grant relief from judgment or order based upon a mistake of fact. *See* Fed. R.

3    Civ. P. 60(b)(1).

4    **III.    ANALYSIS**

5         In its previous order, the Court noted that Nevada recently adopted the "most significant

6    relationship" ("MSR") test of the Restatement (Second) of the Conflict of Laws § 145 for tort

7    actions, unless a more specific section of the Restatement applies. *See Gen. Motors Corp. v.*

8    *Eighth Judicial Dist. Court of State of Nev. ex rel. Cnty. of Clark*, 134 P.3d 111, 116 (Nev.

9    2006).  The MSR test of § 145 therefore applied.  The Second Restatement states a "general

10   principal" for tort claims:

11        (1) The rights and liabilities of the parties with respect to an issue in tort are
          determined by the local law of the state which, with respect to that issue, has the most
12        significant relationship to the occurrence and the parties under the principles stated
          in § 6.
13
          (2) Contacts to be taken into account in applying the principles of § 6 to determine
14        the law applicable to an issue include:

15             (a) the place where the injury occurred,
               (b) the place where the conduct causing the injury occurred,
16             (c) the domicil, residence, nationality, place of incorporation and place of
               business of the parties, and
17             (d) the place where the relationship, if any, between the parties is centered.

18        These contacts are to be evaluated according to their relative importance with respect
          to the particular issue.
19
     Restatement (Second) of Conflict of Laws § 145 (1971).  The principles stated in § 6 are:
20
          (a) the needs of the interstate and international systems,
21        (b) the relevant policies of the forum,
          (c) the relevant policies of other interested states and the relative interests of those
22        states in the determination of the particular issue,
          (d) the protection of justified expectations,
23        (e) the basic policies underlying the particular field of law,
          (f) certainty, predictability and uniformity of result, and
24        (g) ease in the determination and application of the law to be applied.

25   *Id.* § 6(2)(a)–(g).

1    The Court first noted that the injury occurred in Massachusetts, where Plaintiff had its

2    headquarters, and in Pennsylvania, where Plaintiff had its Tantalum factory.  The Court also

3    noted that Cabot claimed to be a global corporation on its own website, and claimed to have

4    manufacturing locations all over the United States, Europe, Mid-East, and Far East.  This factor

5    therefore did not favor any particular state's choice of law.  Second, the conduct causing the

6    injury was alleged to have occurred in Nevada, where the Employees broke their confidentiality

7    pledges and disclosed the Processes to Defendant, and where Defendant manufactured Tantalum

8    using that knowledge.  This factor favored Nevada law.  Third, Defendant was a citizen of a state

9    where it was protected from trade-secret-related claims where a separate claim for trade secret

10   misappropriation lies, and Plaintiff was a citizen of one state where it would be prevented from

11   suing on common law claims related to a trade secrets claim (under the Delaware Uniform Trade

12   Secrets Act ("DUTSA")) and was a citizen of another state where it would not be so prevented

13   (Massachusetts).  This factor favored Defendant because Plaintiff was a global corporation with

14   no unique ties to any particular forum, whereas Defendant apparently operated only in Nevada.

15   Fourth and finally, the relationship between the parties was centered in Nevada, because the

16   alleged misappropriation of trade secrets, which was the only connection between the parties,

17   was alleged to have occurred here.  The Court therefore found that the substantive law of Nevada

18   controls, and that the Nevada Uniform Trade Secrets Act ("NUTSA") "displaced conflicting tort,

19   restitutionary, and other law of this state providing civil remedies for misappropriation of a trade

20   secret." Nev. Rev. Stat. § 600A.090(1).  The Court therefor dismissed the second through fifth

21   causes of action that relied upon the misappropriation of trade secrets.

22          Plaintiff argues that Defendant's statements at oral argument wrongly led the Court to

23   believe that the Pennsylvania factory had been closed down, which is not true.  Plaintiffs argue

24   that reconsideration of the choice-of-law analysis with the knowledge that the factory was still in

25   operation should lead the Court to conclude that Pennsylvania law should control, because the

harm was felt in Pennsylvania.

The Court finds that even accepting as true the claim that Plaintiff's Pennsylvania Tantalum powder plant is still in operation, the outcome of the choice-of-law analysis would be the same.  First, any harm was felt primarily in Delaware and Massachusetts, the states where the corporate Plaintiff is a citizen.  But even if the harm had been felt primarily in Pennsylvania, the most important factor in a trade secrets case is the location of the wrongdoing, not the place of injury:

> The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business.  But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade.   The situation is essentially the same when misappropriation of the plaintiff's trade values is involved, except that the plaintiff may have suffered no pecuniary loss but the defendant rather may have obtained an unfair profit.  For all these reasons, the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts.  Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values.

Restatement (Second) of Conflict of Laws § 145 cmt. f.  The Court has ruled that the location of Defendant's conduct was entirely in Nevada.  Plaintiff only challenged this point by arguing that Defendant's conduct should be considered to have occurred in part in Pennsylvania because that is where the Employees were previously employed by Plaintiff, an argument the Court has rejected and declines to reconsider.  There is no allegation in the Complaint that Defendant sent agents to Pennsylvania, or otherwise contacted the Employees there while they were still working for Plaintiff, in order to lure them away to Nevada.  Nor can any reasonable inference to that effect be drawn from the Complaint.  The only fair implication that can be drawn from the Complaint is that the Employees began working for Defendant in Nevada sometime after having quit or after having been laid off or fired by Plaintiff in Pennsylvania. (*See* Compl. ¶ 14 ("On information and belief, a number of former Cabot employees and consultants were hired by

1  Niotan . . . .")).

2                                  **CONCLUSION**

3          IT IS HEREBY ORDERED that the Motion for Reconsideration (ECF No. 173) is

4  DENIED.

5          IT IS SO ORDERED.

6  Dated this 11th day of March, 2013.

7                                        _____

8                                             ROBERT C. JONES
                                          United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25