1

2

3

4               **UNITED STATES DISTRICT COURT**

5                    **DISTRICT OF NEVADA**

6

7    GLOBAL ADVANCED METALS USA, INC.,        )
                                              )
          Plaintiff,                          )
8                                             )        3:11-cv-00793-RCJ-VPC
     vs.                                      )
9                                             )
     KEMET BLUE POWDER CORP.,                 )           **ORDER**
10                                            )
          Defendant.                          )
11   _____ )

12          This case arises out of Defendant's alleged use of Plaintiff's trade secrets in designing

13   and operating a Tantalum powder factory.  Ten motions are pending before the Court: a Motion

14   for Clarification (ECF No. 329), Defendant's Motion for Summary Judgment (ECF Nos. 330,

15   333),[1] Plaintiff's Cross-Motion for Summary Judgment (ECF Nos. 358, 367),[2] Plaintiff's Motion

16   to Defer Ruling on Summary Judgment (ECF No. 354), three Motions to Seal (ECF Nos. 332,

17   356, 361), a Motion for Redaction (ECF No. 337), a Motion to Strike (ECF No. 368), and a

18   Motion to Extend Time (ECF No. 370).  For the reasons given herein, the Court grants Plaintiff's

19   Motion for Summary Judgment, grants its Motion to Strike in part and denies it in part, denies

20   Defendant's Motion for Summary Judgment and Motion to Extend Time, denies Plaintiff's

21   Motion to Defer Ruling on Summary Judgment,[3] denies the Motion for Clarification, and grants

22   _____

23          [1]There are redacted and unredacted versions of the same motion in the record.

            [2]*See supra* note 1.

24
            [3]This motion has been impliedly withdrawn in light of Plaintiff's own Cross-Motion for
25   Summary Judgment as to the same issue (the statute of limitations on the misappropriation of

1  the Motions to Seal and the Motion for Redaction.

2  **I.  FACTS AND PROCEDURAL HISTORY**

3       Cabot Corp. is a Delaware corporation with its principal place of business in

4  Massachusetts that produced Tantalum powder and related products at its factory in

5  Pennsylvania. (Compl. ¶¶ 1, 5, Apr. 9, 2008, ECF No. 1).  The processes, methods, and

6  techniques (the "Processes") Cabot developed for Tantalum production are not generally known

7  or readily ascertainable, and Cabot made numerous efforts to maintain the secrecy of the

8  Processes; in other words, the Processes are trade secrets. (*See id.* ¶¶ 6–10).

9       Niotan, Inc. was a Nevada corporation with its principal place of business in Nevada. (*Id.*

10  ¶ 2).  Niotan began operating a facility at the Comstock industrial Park in Mound House, Nevada

11  in 2007, which facility is permitted by the Nevada authorities to produce 200 tons of Tantalum

12  powder per year. (*Id.* ¶¶ 11–12).  Niotan hired former Cabot employees (the "Employees") to

13  consult it on Tantalum production in connection with the development of the Mound House

14  facility. (*Id.* ¶ 14).  The Employees owed Cabot a duty of confidentiality under the terms of

15  written agreements but nevertheless shared confidential information about the Processes with

16  Niotan, and Niotan was aware of the Employees' former employment with Cabot, the fact that

17  the Processes were trade secrets, and the fact that the Employees had signed confidentiality

18  agreements prohibiting dissemination thereof. (*Id.* ¶¶ 15–18).  Niotan hired the Employees for

19  the express purpose of acquiring knowledge of the Processes. (*Id.* ¶ 19).  As a result, Niotan was

20  able to replicate the quality of Cabot's Tantalum powder, reduce its production costs, and begin

21  production far earlier than otherwise would have been possible. (*Id.* ¶ 20).

22       Plaintiff sued Defendant in 2008 in the U.S. District Court for the Eastern District of

23  
_____

24  trade secrets claim).  Plaintiff's later representation to the Court that it is entitled to offensive
summary judgment on the issue under Rule 56(a) negates the earlier representation in its Rule
25  56(d) motion that it has no evidence to oppose Defendant's defensive Rule 56(a) motion on the
same issue.

1  Pennsylvania on six state law causes of action: (1) Trade Secret Misappropriation; (2) Tortious

2  Interference with Contractual Relations; (3) Conversion; (4) Aiding and Abetting a Breach of

3  Fiduciary Duty; (5) Unfair Competition and Unfair and Deceptive Trade Practices; and (6)

4  Unjust Enrichment.  Cabot demanded a jury trial and prayed for injunctive relief, restitution for

5  unjust enrichment, and attorney's fees and costs.  After filing the Complaint, Cabot Corp. sold

6  the relevant portion of its business to Global Advanced Metals USA, Inc. ("GAM"), which

7  company has been substituted as Plaintiff, and Kemet Electronics Corp. acquired Niotan as a

8  subsidiary and changed Niotan's name to Kemet Blue Powder Corp. ("Kemet"), which company

9  has been substituted as Defendant.  The case was transferred to this District in 2011.

10      The Court granted a judgment on the pleadings in favor of Defendant as to the second

11  through sixth claims as preempted under Nevada law after a choice-of-law analysis in favor of

12  Nevada law.  The Court denied a motion to reconsider.  Plaintiff has filed the First Amended

13  Complaint ("FAC"), which lists two causes of action: (1) Trade Secret Misappropriation; and (2)

14  Tortious Interference with Contractual Relations. (*See* First Am. Compl., Jan. 25, 2013, ECF No.

15  261).  Upon Defendant's motion, the Court dismissed the second cause of action of the FAC and

16  struck paragraph 19.  For the reasons given in that order, the Court denies the present Motion for

17  Clarification.[4]  The parties have filed cross-motions for summary judgment as to the statute of

18  limitations on the remaining claim.

19

20      [4]Plaintiff may still add a claim for breach of contract, but the proper targets of such a
21  claim are the Employees, which Plaintiff has never attempted to join.  Insofar as Plaintiff wishes
    to hold Defendant liable for the Employees' breach of their confidentiality agreements on a
22  tortious interference theory, tort claims such as these, however titled, are preempted by the
    Nevada Uniform Trade Secrets Act ("NUTSA"), Nev. Rev. Stat. § 600A.090(1), because the
23  gravamen of such a claim is the misappropriation of trade secrets where the alleged material
    breach of the agreement is the divulgence of such secrets in violation of the contract.  Although
24  NUTSA does not preempt contractual remedies against the Employees directly, *see id.*
    § 600A.090(2)(a), interference with a contract by a third party sounds in tort and is therefore
25  preempted.

1    **II.    LEGAL STANDARDS**

2        **A.    Rule 56(a)**

3        A court must grant summary judgment when "the movant shows that there is no genuine

4    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

5    Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*

6    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there

7    is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A

8    principal purpose of summary judgment is "to isolate and dispose of factually unsupported

9    claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

10   judgment, a court uses a burden-shifting scheme:

11           When the party moving for summary judgment would bear the burden of proof at
             trial, it must come forward with evidence which would entitle it to a directed verdict
12           if the evidence went uncontroverted at trial.  In such a case, the moving party has the
             initial burden of establishing the absence of a genuine issue of fact on each issue
13           material to its case.

14   *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

15   and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden

16   of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

17   presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

18   demonstrating that the nonmoving party failed to make a showing sufficient to establish an

19   element essential to that party's case on which that party will bear the burden of proof at trial. *See*

20   *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary

21   judgment must be denied and the court need not consider the nonmoving party's evidence. *See*

22   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

23       If the moving party meets its initial burden, the burden then shifts to the opposing party to

24   establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

25   475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**B.     Rule 56(d)**

A party opposing summary judgment may, if it attests to a specified inability to oppose the motion with evidence, request that the court deny the motion on that basis or defer ruling until it has had sufficient time to obtain evidence to oppose the motion:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

**III.    ANALYSIS**

Plaintiffs filed the present case on April 9, 2008.  The statute of limitations for a misappropriation claim is three years. Nev. Rev. Stat. § 600A.080 ("An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by

the exercise of reasonable diligence should have been discovered.  For the purposes of this section, a continuing misappropriation constitutes a single claim.").  Therefore, the statute of limitations bars the sole remaining claim if Plaintiff knew or through reasonable diligence would have known of the facts upon which it bases the claim on or before April 9, 2005.  Defendant argues that Plaintiff in fact knew of the facts allegedly supporting the claims of misappropriation as early as 2003, when Plaintiff contacted a former employee in writing to complain that Plaintiff believed he was violating his confidentiality agreement and then contacted Defendant itself over the issue, *affirmatively accusing* Defendant of misappropriation, not simply warning it not to do so.

The sealed exhibits indicate first that Plaintiff was concerned that its former employee ("Employee 1") might be violating his confidentiality agreement. (*See* Letter, Feb. 20, 32003, ECF No. 330-7, at 22, Bates No. GAM0004285).  The letter to the employee does not mention Defendant (or any business entity at all) but only that the employee had potentially emailed confidential information to certain email addresses (that do not indicate Defendant's name) and that one of his notebooks was missing. (*See id.*).  This knowledge might under the statute of limitations prevent a breach of contract claim against the employee, but it does not prevent a trade secrets misappropriation claim against Defendant.  However, another letter sent to the employee indicates that Plaintiff had discovered the employee was working for Defendant, and Plaintiff again reminded the employee of his confidentiality agreement. (*See* Letter, Sept. 18, 2003, ECF No. 330-7, at 24, Bates No. GAM0004150).  There are similar letters adduced concerning another employee ("Employee 2").  All this evidence simply shows that Plaintiff was concerned its former employee's might breach their confidentiality agreements.  The critical piece of evidence is a letter from Cabot to Niotan itself in which Cabot stated, "[W]e have reason to believe that in the course of his employment with Niotan, [Employee 1] has and may continue to disclose to you Cabot confidential information . . . .  We demand that Niotan cease and desist

1   any such use of Cabot confidential information, as Cabot intends to vigorously pursue any such

2   violations . . . ." (Letter, Oct. 14, 2003, ECF No. 330-3, at 82, Bates No. KBPC00303).  This is

3   not a speculative warning but an affirmative charge of misappropriation and a demand to cease

4   and desist or face legal action.  Defendant has therefore satisfied its initial burden on the statute

5   of limitations issue.  It is clear that Plaintiff had knowledge of the alleged violations more than

6   three years before filing the present lawsuit such that Defendant would be entitled to a directed

7   verdict on this affirmative defense if the evidence went uncontroverted at trial.

8        Furthermore, Plaintiff's opposition is, as Defendant notes in its Motion to Strike,

9   untimely, at least in part.  As Defendant notes, the magistrate judge has clearly warned counsel

10  for Plaintiffs that "it sets specific timelines and deadlines for a reason; therefore, the next time

11  papers are filed late by Global Advanced Metals USA, Inc. ("GAM"), the Court will strike the

12  papers." (Mins., Dec. 11, 2012, ECF No. 218).  Defendant also notes that the original deadline

13  for Plaintiff to respond to Defendant's present Motion for Summary Judgment was April 22,

14  2013, notes that the magistrate judge extended the deadline to 5:00 p.m. on May 6, 2013,

15  (*see* Order, Apr. 23, 2013, ECF No. 343), and argues that Plaintiff did not file its Response until

16  after 11:00 p.m. on May 6, 2013.  Defendant is partially correct, and the Court therefore grants

17  the Motion to Strike in part.  A check of the Court's internal receipt system indicates that the

18  Response (ECF No. 350) was timely filed at 4:34 p.m. on May 6, 2013, but the Sealed Response

19  (ECF No. 351) was filed at 11:48 p.m. on May 6, 2013, and the attendant Declarations (ECF

20  Nos. 352, 353) were filed on May 7, 2013.  The Court will therefore strike the untimely filings

21  but will consider the timely Response (ECF No. 350).  Plaintiff's explanation that it was too busy

22  to timely file the entire response is unacceptable and unworthy of further comment.

23        Defendant also asks the Court to strike Plaintiff's Rule 56(d) Motion (ECF No. 354), its

24  Cross-Motion for Summary Judgment (ECF Nos. 358, 367), and its Declarations (ECF Nos. 365,

25  366) in support of those motions.  The Court will not strike these motions.  Defendant has not

1    shown that they violate the scheduling order or other orders.  The Response is clearly late in part,

2    and insofar as Plaintiff's own motions are meant to be in opposition to Defendant's Motion for

3    Summary Judgment, the Court will not consider the arguments therein or evidence attached

4    thereto, but the Court will not formally strike these motions.

5         The Court now turns to the Response (ECF No. 350).  The Response is simply a limited

6    objection to the Court's taking judicial notice of certain evidence in support of Defendant's

7    Motion for Summary Judgment.  Because the Court does not rely on those pieces of evidence in

8    finding that Defendant has satisfied its initial burden, and because Plaintiff adduces no timely

9    objection creating any genuine issue of material fact, the Court grants Defendant's Motion for

10   Summary Judgment.[5]

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21

22        [5]Although it is not the basis for the ruling, the Court also notes that even if it were to
     consider Plaintiff's untimely response, nothing therein negates the evidence that it clearly had
23   notice of the alleged violations more than three years before filing the present lawsuit.  Niotan's
     response to Cabot's October 14, 2013 letter in which Niotan denies any misappropriation does
24   nothing to negate Cabot's previous discovery of facts leading it to believe there may have been
     misappropriation.  Plaintiff argues that "discovery" does not occur until a plaintiff has facts from
25   which a reasonable jury could find misappropriation.  But if Plaintiff did have such facts—much
     more than mere suspicion—on October 14, 2003, when it threatened legal action.

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF Nos. 330, 333)

3 is GRANTED and the Motion to Strike (ECF No. 368) is GRANTED IN PART and DENIED IN

4 PART.  The following pleadings are STRICKEN: ECF Nos. 351, 352, 353.

5        IT IS FURTHER ORDERED that the Cross-Motion for Summary Judgment (ECF Nos.

6 358, 367) is DENIED.

7        IT IS FURTHER ORDERED that the Motion to Defer Ruling on Summary Judgment

8 (ECF No. 354) is DENIED.

9        IT IS FURTHER ORDERED that the Motion for Clarification (ECF No. 329) is

10 DENIED.

11        IT IS FURTHER ORDERED that the Motions to Seal (ECF Nos. 332, 356, 361) and the

12 Motion for Redaction (ECF No. 337) are GRANTED.

13        IT IS SO ORDERED.

14 Dated this 28th day of May, 2013.

15

16                                          _____
                                                ROBERT C. JONES
17                                          United States District Judge

18

19

20

21

22

23

24

25